UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JUDGE BUCKLO
MAGISTRATE JUDGE MARTIN

| UNITED STATES OF AMERICA | ) | No. 15 CR 713 |
| --- | --- | --- |
| v. | ) | Violation: Title 18, United States Code, Sections 1343 and 1346 |
| FELIPE OROPESA | ) | |

FILED
DEC 0 8 2015
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

The UNITED STATES ATTORNEY charges:

1. At times material to this information:

   a. The City of Chicago was a unit of local government and a political subdivision of the State of Illinois.

   b. FELIPE OROPESA was vice-president for government relations for LAZ Parking, a company that installed, managed, operated and maintained parking systems for municipalities and other entities.

   c. Individual A was founder and chief executive officer of Company A, a company that sold and installed advanced parking meters and related equipment.

   d. Chicago Parking Meters LLC (CPM) was a consortium led by investment bank Morgan Stanley, to privatize the City of Chicago's parking meters. Under the deal, the City of Chicago leased the city's parking meters to CPM for 75 years in exchange for an upfront payment of approximately $1.15 billion. CPM then contracted with LAZ Parking to manage the privatized meters. OROPESA was the LAZ Parking executive tasked with overseeing LAZ Parking's rollout of the privatized parking meters.

   e. CPM formed a three-member panel to determine which vendor would be

awarded the contract to supply the parking meters and related equipment. OROPESA was one member of the panel. In January 2009, the CPM selection panel unanimously selected Company A as the supplier of parking meters and related equipment for the Chicago parking meter privatization project. The contract awarded to Company A was worth approximately $22 million for the parking meters as well as additional monthly per meter service fees, which totaled approximately $2 million per year for seven years.

2. Beginning no later than December 2008, and continuing until in or around July 2011, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

FELIPE OROPESA,

defendant herein, knowingly devised, intended to devise, and participated in a scheme to defraud and to deprive LAZ Parking of its right to the honest services of OROPESA through bribery.

3. It was part of the scheme that in December 2008 defendant FELIPE OROPESA agreed to accept future payments from Individual A in exchange for ensuring that CPM selected Company A as its vendor of parking meters and related equipment.

4. It was further part of the scheme that OROPESA, as part of the three-member selection panel, voted to award the parking meter contract to Company A.

5. It was further part of the scheme that after Company A had been awarded the Chicago parking meter contract, OROPESA directed Individual A to make the bribe payments by writing checks to a company formed by Individual B, an individual associated with OROPESA.

6. It was further part of the scheme that after Company A had been awarded the Chicago parking meter contract, OROPESA sent Individual A a form contract to sign. The contract, signed by Individual B, called for Company A to pay $90,000 to the company formed

2

by Individual B.

7. It was further part of the scheme that under Individual A's direction, Company A wrote four checks totaling $90,000 to the company created by Individual B in order to pay OROPESA for helping ensure that CPM would award Company A the Chicago parking meter contract. In truth, the company had not done any work for Company A and the $90,000 constituted the bribe payments upon which OROPESA and Individual A had agreed.

8. It was further part of the scheme that in July 2011, at OROPESA's direction, Individual B e-mailed Individual A in an effort to obtain additional bribe payments that OROPESA believed he was owed under his agreement with Individual A.

9. It was further part of the scheme that OROPESA misrepresented, concealed, and hid, and caused to be misrepresented, concealed, and hidden the true purposes of the acts done in furtherance of the scheme.

10. On or about July 7, 2011, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

FELIPE OROPESA,

defendant herein, for the purpose of executing the above-described scheme, did knowingly cause to be transmitted by means of wire communication in interstate commerce, certain writings, signs, and signals, namely, an electronic mail message to Individual A, stating, "Hi [Individual A]. Do you need me to send you an invoice for 2011?"

In violation of Title 18, United States Code, Section 1343 and 1346.

## FORFEITURE ALLEGATION

The UNITED STATES ATTORNEY further alleges:

1. Upon conviction of an offense in violation of Title 18, United States Code, Section 1343, as set forth in this Information, defendant shall forfeit to the United States of America any property which constitutes and is derived from proceeds traceable to the offense, as provided in Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2. The property to be forfeited includes, but is not limited to, a personal money judgment in the amount of $90,000.

3. If any of the property described above, as a result of any act or omission by a defendant: cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property, as provided in Title 21, United States Code Section 853(p).

_Zachary J. Hardon_
UNITED STATES ATTORNEY
by LJBarsella